IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.<br><br>*Plaintiff,*<br><br>v.<br><br>LESTER HOWELL, *et al.,*<br><br>*Defendants.* | CIVIL ACTION<br>NO. 18-02318 |

**PAPPERT, J.**                                                                               April 24, 2019

## MEMORANDUM

Joe Hand Promotions, Inc. sued Lester and Shamah Howell, individually and d/b/a Bottoms Up 215, alleging violations of 47 U.S.C. §§ 553 and 605. Joe Hand contends that Defendants unlawfully intercepted and broadcast a pay-per-view boxing event for which it had the exclusive broadcasting rights. After Defendants failed to respond to the Complaint, Joe Hand filed a Motion for Default Judgment, which the Court grants in part and denies in part.

I

A consequence of "the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal question marks omitted). The Court need not, however, accept the moving party's legal conclusions. *See id.*; *see also DirecTV, Inv. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006).

Joe Hand Promotions distributes sports and entertainment programming to commercial establishments. (Compl. ¶ 4.) Joe Hand contracted for the exclusive

1

licensing rights to an August 26, 2017 boxing match, (the "Fight"), between Floyd Mayweather, Jr. and Conor McGregor. (*Id*. at ¶ 5.) Individual customers could stream the Fight for non-commercial use for a retail price of $99.99. (*Id*. at ¶ 13.) However, commercial entities such as bars, restaurants and nightclubs could only broadcast the Fight by sublicensing the rights from Joe Hand for a fee based upon the maximum capacity of the venue. *See* (*id*. at ¶¶ 4, 11).

Joe Hand alleges that it did not sublicense the rights to the Fight to Bottoms Up 215, a commercial establishment located at 2515 Island Avenue, Philadelphia, PA 19153. (*Id*. at ¶¶ 7, 16.) Despite this, Bottoms Up 215 allegedly advertised the Fight on its Facebook page, *see* (Mot. Def. J., Ex. 6 ("Janis Affidavit"), ¶ 2, ECF No. 10-6) and showed the Fight on one of its several televisions, (Mot. Def. J., Ex. 5 ("Jones Affidavit"), at 1–2, ECF No. 10-5). Gregory Jones, an auditor hired by Joe Hand, visited the bar on the night of the Fight and watched the Fight on a 30 inch television at the side of the bar. (*Id*.)

On June 1, 2018, Joe Hand filed its Complaint in this Court against Lester Howell and Shamah Howell, individually and d/b/a Bottoms Up 215 and a John Doe Entity d/b/a Bottoms Up 215. (ECF No. 1.) Defendants failed to appear or answer Joe Hand's Complaint and the Clerk of Court entered their default on December 13, 2018, *see* (ECF No. 8). Joe Hand voluntarily dismissed the John Doe Entity d/b/a Bottoms Up 215 on January 29, 2019. *See* (ECF No. 9).

II

Rule 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *See Anchorage Assocs.*

*v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). As an initial matter, the Court must determine whether it has jurisdiction over the subject matter and the parties, including whether service was proper, *see D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 436 (E.D. Pa. 2006), and whether "the unchallenged facts constitute a legitimate cause of action," *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (quotation omitted).

A

The Court has jurisdiction over both the subject matter and the parties. The case arises under federal law, giving the Court subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See also* 47 U.S.C. §§ 553(c)(1), 605(e)(3)(A). Moreover, all conduct giving rise to Joe Hand's claims occurred in Pennsylvania, *see generally* (Compl.), Lester and Shamah Howell are Pennsylvania residents, *see* (*id*. at ¶ 8), and Defendants were properly served in Pennsylvania. *See* (ECF No. 7.)

B

Joe Hand brought this action pursuant to 47 U.S.C. §§ 553 and 605. Both statutes "prohibit the unauthorized interception and exhibition of communications." *J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *2 (E.D. Pa. May 18, 2015). However, a "[plaintiff] may not recover under both § 605 and § 553[.]" *J & J Sports Prods., Inc. v. 4326 Kurz, Ltd.,* No. CIV.A. 07-3850, 2008 WL 4630508, at *3 (E.D. Pa. Oct. 17, 2008). Sections 605 and 553 provide alternative forms of relief depending on how the interception takes place; "relief under § 605 is available if there is an interception of satellite transmissions, and relief under § 553 is available if there

is an interception of the transmissions after they reach the cable system." *Id*. (citing 47 U.S.C. §§ 553, 605).

While Joe Hand sought judgment pursuant to § 605, there is a presumption in favor of § 553 at the default judgment stage where the plaintiff produces no evidence of an interception of satellite, as opposed to cable, transmissions. *See Joe Hand Promotions, Inc. v. Yakubets (Yakubets I)*, No. CIV.A. 12-4583, 2013 WL 5224123, at *5 (E.D. Pa. Sept. 17, 2013) ("the presumption that § 553 applies absent any evidence of interception by satellite is a more principled approach."). Joe Hand provides no evidence that a satellite transmission was intercepted. It alleges instead that Defendants intercepted the Fight by either "redirecting cable or satellite service from a nearby residence." (Compl. ¶ 12.) Moreover, the affidavit of Gregory Jones contains allegations that indicate violations occurred through cable rather than a satellite. *See* (Jones Affidavit at 2 ("A Fios menu then appeared on the screen[.]")). The Court will accordingly apply § 553 to this case.[1]

Under § 553, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so[.]" 47 U.S.C. § 553(a)(1). A plaintiff must satisfy three elements to establish a defendant's liability: (1) interception of a satellite transmission or broadcast, (2) lack of authorization, and (3) publication. *J&J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (citing 47 U.S.C. §§ 553(a), 605(a)).

---

[1] While the Court applies § 553, damages awarded by the Court would be the same under both §§ 553 and 605.

4

Joe Hand has alleged facts that establish liability under § 553 against Defendants doing business as Bottoms Up 215.[2] Joe Hand alleges that it owned the exclusive distribution rights to the Fight and that Bottoms Up 215 did not pay for those broadcasting rights. (Compl. ¶¶ 5, 15, 16.) Joe Hand alleges that Lester and Shamah Howell were "officer[s], director[s], shareholder[s], member[s] or principal[s] of the entity owning and operating [Bottoms Up 215]." (Compl. ¶ 8.) In his affidavit, auditor Gregory Jones states that he observed Bottoms Up 215 airing the fight on one of its televisions. (Jones Affidavit at 1–2.) Joe Hand further asserts that Bottoms Up 215 obtained the Fight through the "illegal misuse of cable and satellite service by: (1) intercepting and redirecting cable or satellite service from a nearby residence, (2) registering their business location as a residence, (3) physically moving a cable or satellite receiver from a residence to their business, and/or (4) obtaining the [Fight] in violation of the terms of their television service provider agreement." (Compl. ¶ 12.)

Although Joe Hand has established liability against Bottoms Up 215 and Defendants in their corporate capacities, its allegations are insufficient to hold Lester and Shamah Howell personally liable. *See* (Mot. at 14–15). In certain circumstances, individuals may be held vicariously liable for a violation of § 553. *See J & J Sports Prods., Inc. v. Smalls*, No. CV 16-4883, 2017 WL 4680612, at *2 (E.D. Pa. Oct. 18,

---

[2] The Complaint and Motion are a bit convoluted. In its papers, Joe Hand states that it seeks damages against "Defendants Lester Howell and Shamah Howell, individually and d/b/a Bottoms Up 215." (Mot. at 1.) The Court interprets claims against Lester Howell and Shamah Howell "d/b/a Bottoms Up 215" as claims against the entity Bottoms Up 215 and the individual Defendants in their corporate capacities. *See J & J Sports Prods., Inc. v. Martinez*, No. CIV.A. 13-6885, 2014 WL 5410199, at *1 (E.D. Pa. Oct. 23, 2014) (interpreting defendants doing business as a commercial establishment as suit against those individuals in their corporate capacities). Indeed, interpreting it any other way would render nonsensical that section of the Motion seeking to hold the Howells vicariously liable, *see* (Mot. at 14–15).

5

2017). A plaintiff must show that the individual "(1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, *i.e.*, financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity." *See Joe Hand Promotions, Inc. v. Yakubets (Yakubets II)*, 3 F. Supp. 3d 261, 277 (E.D. Pa. 2014) (applying test to § 553); *see also Hackett*, 269 F. Supp. 3d at 663 (applying test to § 605). Conclusory allegations "on information and belief will generally not be enough, even at the default judgment stage, to allow the imposition of vicarious liability." *See, e.g.*, *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009); *J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 591–92 (D. Md. 2012).[3]

In its Complaint, Joe Hand conclusorily alleges that Lester and Shamah Howell were "officer[s], director[s], shareholder[s], member[s] or principal[s] of the entity owning and operating [Bottoms Up 215]." (Compl. ¶ 8.) Joe Hand also asserts that the Howells "had the right and ability to supervise" the infringing activity and had an "obvious and direct financial interest in the activities of the Establishment[.]" (Compl. ¶ 9.) In support of these allegations, Joe Hand attaches the affidavit of its counsel Ryan J. Janis, who testified that "I spoke with Bounta Phengsisouk, the owner of the liquor license for 2515 Island Avenue, Philadelphia, PA 19153 who informed me that

---

[3] In the default context, "the absence of the defendants counsels greater flexibility toward . . . plaintiffs because it impedes their ability to obtain . . . discovery." *Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005); *see also Flanagan v. N. Star Concrete Constr., Inc.*, No. 13-CV-2300, 2014 WL 4954615, at *6 (E.D.N.Y. Oct. 2, 2014) (finding on motion for default judgment that some leeway should be given for facts within exclusive knowledge of defaulting defendant). Nonetheless, "[d]ifficulty in meeting [Plaintiff's] burden . . . is not a license to ignore and dispense with ordinary pleading requirements. If [Plaintiff] wishes to assert liability against [Defendants], it must adduce an adequate basis for doing so." *291 Bar & Lounge,* 648 F. Supp. 2d at 473.

6

Lester Howell was leasing the property and liquor license from him and personally operating Bottoms Up 215[.]" (Janis Affidavit ¶ 4.) Janis further stated that he "personally visited and captured screenshots . . . of Bottom's Up 215's Facebook page" which provides that "Shamah Howell is the contact for event space rental." (*Id.* at ¶¶ 2–3; Mot. Def. J. Ex. B, ECF No. 10-8.)

The issue here is whether the factual assertions in the Complaint, together with Janis' affidavit, adequately establish the Howells' supervision or direct financial interest as required under § 553. Conclusory allegations of ownership, even when supplemented by testimony that an individual's name was on the liquor license for the property, do not establish a direct financial interest required to hold an individual vicariously liable. *See J & J Sports Prods., Inc. v. Maryland Food & Entm't, LLC*, No. CIV.A. ELH-11-3344, 2012 WL 5289790, at *5 n.6 (D. Md. Oct. 24, 2012) (ruling that listing individual defendants on a liquor license did not create a presumption that the individual defendants have financial interests in the violation); *Joe Hand Promotions, Inc. v. Maryland Food & Entm't, LLC*, No. CIV. CCB-11-3272, 2012 WL 5879127, at *3 (D. Md. Nov. 19, 2012) (same).

Where courts have imposed vicarious liability under similar circumstances, plaintiffs typically show a direct financial benefit in the violation through ownership or a financial stake in the establishment. For example, in *Yakubets II*, the court held that an adequate showing of financial benefit existed where there was information on a liquor license identifying an individual defendant as the "President, Secretary/Treasurer, Director, Stockholder, and Manager/Steward" of the establishment. 3 F. Supp. 3d at 299–301. The court emphasized that

7

> Cafe Nostalgie's liquor license—not the fact of the liquor license, but what it specifically states about Mr. Yakubets's role—fills an otherwise empty allegation made on information and belief with such factual content as permits the inference of Mr. Yakubets's right and ability to supervise paired with a direct financial benefit.

*Id.* at 301 (internal quotation omitted). Unlike in *Yakubets II*, there are no factual allegations here that show that Lester or Shamah Howell had a direct financial interest in either the establishment or the conduct that violated § 553—*i.e.*, that financial benefits flowed to them because of the violative conduct. Allegations that Lester leased the liquor license for the property and was operating the property and that Shamah was the contact on a Facebook page are insufficient to show "a direct financial interest" in the alleged violation, as required under § 553.

### III

Where jurisdiction exists and Plaintiff has stated a claim, three factors guide whether default judgment should be granted: (1) whether the plaintiff will be prejudiced if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Application of the *Chamberlain* factors supports entry of default judgment. First, denying the motion will prejudice Joe Hand. "Considerable delays," especially those that might "stretch on indefinitely," prejudice a plaintiff's ability to effectively pursue its claim. *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013). Second, the Court may presume that an absent defendant who has failed to answer has no meritorious defense, *see, e.g., Doe v. Simone*, No. 12–5825, 2013

8

WL 3772532, at *5 (D.N.J. July 17, 2013), because "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Yakubets II*, 3 F. Supp. 3d at 271–72 (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)). Third, the Defendants' failure or refusal to "engage[ ] in the litigation process and [to] offer[ ] no reason for this failure or refusal" may "qualif[y] as culpable conduct with respect to the entry of a default judgment." *Yakubets II*, 3 F. Supp. 3d at 272 (citing *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009)).

IV

After granting a motion for default judgment, the Court must calculate the appropriate damages. *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015). Unlike liability, unless damages are "liquidated or computable," they "cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to [Rule] 55(b)(2)," *Comdyne I*, 908 F.2d at 1152, or otherwise by such proof as the plaintiff may submit without a hearing. *See Yakubets II*, 3 F. Supp. 3d at 271. Joe Hand seeks actual or statutory damages, enhanced damages based upon willful violations and costs of the litigation.

A

An aggrieved party under § 553 is entitled to actual or statutory damages. Under § 553(c)(3)(A), statutory damages may be awarded in a sum of not less than $250 or more than $10,000 as the court considers just. Such damages should be calculated based solely on an estimate of actual damages, without considering deterrence. *See*

9

*Yakubets II*, 3 F. Supp. 3d at 277 (citing *Charter Commc'ns Entm't I, DST v. Burdulis,* 460 F.3d 168, 181–83 (1st Cir. 2006)).

Joe Hand seeks $5,200 in statutory damages based upon the rate it charged commercial establishments with a maximum occupancy between 101 and 150 people to sublicense the Fight. *See* (Mot. Def. J. at 6; Mot. Def. J. Ex 4, "Rate Card", ECF No. 10-4). Auditor Gregory Jones states in his affidavit that he counted 125 people in the establishment at 12:30 a.m. and estimated that the bar had a maximum capacity of 150 people. (Jones Affidavit at 2.) The Court therefore finds an award of $5,200 in statutory damages appropriate in this case.

B

Section § 553 also provides for enhanced damages in the court's discretion of up to $50,000 if the violation was committed (a) "willfully" and (b) "for purposes of commercial advantage or private financial gain," 47 U.S.C. § 553(c)(3)(B). "[W]illfulness for purposes of § 553(c)(3)(B)'s enhanced damages requires both the defendant's intentional signal interception as well as knowledge of or reckless disregard as to the unlawfulness of its signal interception." *Yakubets II*, 3 F. Supp. 3d at 284; *Martinez*, 2014 WL 5410199, at *8.

"[C]ourts have repeatedly found that the mere act of piracy itself evidences intent because in order for a closed circuit broadcast to be intercepted, the interceptor has to engage in some deliberate act; it is virtually impossible to do so accidentally." *Martinez*, 2014 WL 5410199, at *8. Here, Bottoms Up 215's violation was willful within the meaning of § 553 because the uncontested evidence supports both "intentional signal interception as well as knowledge of or reckless disregard as to the unlawfulness

10

of its signal interception." *J & J Sports Prods., Inc. v. Hackett*, 269 F. Supp. 3d 658, 666 (E.D. Pa. 2017) (citing *Yakubets II*, 3 F. Supp. 3d at 284).

There are "two predominant methods for calculating enhanced damages in this Circuit." *Joe Hand Promotions, Inc. v. Michelina Enterprises, Inc.*, No. 3:16-CV-01880, 2017 WL 3581674, at *4 (M.D. Pa. Aug. 18, 2017). Some courts apply a multiplier of at least three to six times the award of statutory or actual damages. *See, e.g.*, *Yakubets II,* 3 F. Supp. 3d at 291 (multiplier of three); *Cruz*, 2015 WL 2376051, at *7 (same). Other courts weigh a list of non-exhaustive factors to assess the amount of enhanced damages warranted in a particular case, such as "(1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast." *Michelina Enterprises*, 2017 WL 3581674, at *4 (citing *Joe Hand Promotions, Inc. v. Waldron*, No. CIV. 11-849 RBK/KMW, 2013 WL 1007398, at *7 (D.N.J. Mar. 13, 2013)).

Here, a multiplier three times the award of statutory damages, totaling $15,600.00, would "result in a gross overcompensation of Plaintiff[.]" *See Martinez*, 2014 WL 5410199, at *9; *see also Hackett*, 2017 WL 3912403 at *5; *Smalls*, 2017 WL 4680612, at *3. Considering the circumstances establishing Bottoms Up 215's violation of § 553, the Court finds that a lesser amount is appropriate and applies the factors outlined in *Michelina Enterprises*. There is no evidence that Defendants are repeat offenders, which is a primary consideration under both methods of calculating

enhanced damages. *See Yakubets II*, 3 F. Supp. 3d at 277; *Michelina Enterprises*, 2017 WL 3581674, at *4. Moreover, while Bottoms Up 215 advertised the Fight on its Facebook page, it showed the Fight on only one 30 inch television in the entire bar. (Jones Affidavit at 1–2.) And, while Defendants charged a cover fee for entry, there is no evidence that cover charges were unique to the night of the Fight nor any evidence of premiums on its food and drink because of the broadcast. The Court, therefore, exercises its discretion and imposes an enhanced damages award equal to the statutory damages award in the amount of $5,200.

C

Joe Hand seeks recovery of the costs expended in prosecuting this action. Under § 553(c)(2)(C), "the court may direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Joe Hand has submitted an affidavit which states that it incurred costs of $400 in filing fees and $498.09 to effectuate service on Defendants, totaling $898.09. (Janis Affidavit ¶¶ 11–12.) Joe Hand also seeks attorneys' fees, and requests the Court permit it to file a Fee Application for attorneys' fees. The Court grants the request for costs and will allow Joe Hand to file its attorneys' fees application.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
